RACHEL E. KAUFMAN, CA BAR NO. 259353
KAUFMAN, P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Attorney for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GRACE WAMMACK** and **MICHAEL TRUJILLO,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiffs,* | **CLASS ACTION** |
| | **JURY TRIAL DEMAND** |
| *v.* | |
| **LEADSMARKET.COM, LLC,** a California limited liability company, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Grace Wammack ("Wammack" or "Plaintiff Wammack") and

Plaintiff Michael Trujillo ("Trujillo" or "Plaintiff Trujillo") bring this Class Action

Complaint and Demand for Jury Trial against Defendant LeadsMarket.com, LLC

1

CLASS ACTION COMPLAINT

("LeadsMarket" or "Defendant") to stop LeadsMarket from violating the Telephone Consumer Protection Act ("TCPA") by sending unsolicited autodialed text messages to consumers, including to consumers whose phone numbers were registered on the National Do Not Call registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by LeadsMarket's conduct. Plaintiffs, for this Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorney.

## INTRODUCTION

1.      LeadsMarket runs a number of related cash advance and payday loan websites.

2.      In order to generate new business, LeadsMarket uses telemarketing, including text message marketing.

3.      LeadsMarket sends out text messages directly and indirectly through its affiliates. Regardless of whether LeadsMarket is directly sending the telemarketing text messages it benefits from each successful solicitation and is aware of the behavior of its affiliates.

4.      In Plaintiff Wammack's case, LeadsMarket or its affiliates sent at least 50 autodialed text messages to Plaintiff Wammack's cellular phone number without her consent, at least 25 of which were sent after Wammack opted-out from

CLASS ACTION COMPLAINT

receiving the unsolicited text messages, and despite her number being registered on the DNC.

5.     In Plaintiff Trujillo's case, LeadsMarket or its affiliate sent at least 2 unwanted, autodialed text messages to Trujillo's cellular phone number, despite his number being registered on the DNC.

6.     In response to these unsolicited text messages, Plaintiff Wammack and Plaintiff Trujillo are filing this lawsuit seeking injunctive relief for Defendant to cease from violating the TCPA and the DNC by sending autodialed text messages to consumers' cellular telephone numbers, including phone numbers that are registered on the DNC, as well as an award of statutory damages to the members of the Class and costs.

## PARTIES

7.     Plaintiff Wammack is a Grand Rapids, Michigan resident.

8.     Plaintiff Trujillo is a Victorville, California resident.

9.     Defendant LeadsMarket.com is a California company headquartered in Encino, California. Defendant conducts business nationwide including this District.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

10. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227.

11. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is located in this District, conducts business in this District, and some of the calls were directed to this District.

## COMMON ALLEGATIONS

**LeadsMarket Solicits Consumers Using a Number of Different Corporate Identities and Affiliates to Disguise Its Unsolicited Text Message Marketing**

12. LeadsMarket operates using the names Nesmetaju LLC, Weekly Deal LLC, WD Services, and others.

13. These assumed names are important, as both Plaintiff Wammack and/or Plaintiff Trujillo were solicited for loans by LeadsMarket using these different names.

14. Nesmetaju LLC is a d/b/a used by Defendant LeadsMarket as the registered name on websites such as whiterockloans.com:

4

CLASS ACTION COMPLAINT



15. Nesmetaju LLC is linked directly to WD Services and Weekly Deal LLC in a number of ways, showing that the three names are interchangeable.

16. For example, whiterockloans.com was registered to Nesmetaju LLC as of January 8, 2019. A whois search of whiterockloans.com shows that the site was previously registered to Weekly Deal LLC on December 11, 2015.

17. Frank Kasimov is the Director at LeadsMarket:

---

[1] https://www.whiterockloans.com/PrivacyPolicy

[2] https://domainbigdata.com/whiterockloans.com

5

CLASS ACTION COMPLAINT

Frank Kasimov • 3rd
Director at LeadsMarket.com                                    3

18.    Kasimov primarily uses the name Frank, though he is also referred to
as Furkat or Furat.

19.    Kasimov's LeadsMarket email address is directly connected to both
WD Services and Weekly Deal LLC:

**frank@leadsmarket.com** is associated to this person

| | | |
|---|---|---|
| Name | Wd Services | is associated with 26 domains |
| Organization | Weekly Deal Llc | is associated with 35 domains |
| Address | 3651 Lindell Road | map |
| City | Las Vegas | |
| State | NV | |
| Country | 🇺🇸 United States | |
| Phone | +1.8001112222 | |
| Private | no | |

4

20.    Kasimov is also directly connected to Nesmetaju using his
leadsmarket.com email address. This is how the connection works.

---

[3] https://www.linkedin.com/in/frankkasimov/

[4] https://domainbigdata.com/leadsmarket.com/mj/TJ4XczfsDbdEvXCH8_7HCg

CLASS ACTION COMPLAINT

a) Financedfast.com shows that it is owned by Nesmetaju LLC in its privacy policy.[5]

b) Financedfast.com is registered to Weekly Deal LLC, according to its whois.[6]

c) The email address associated with the website registry for FinancedFast.com is frank@leadsmarket.com:

| | | |
|---|---|---|
| Name | Marketing Department | is associated with 100+ domains |
| Organization | Weekly Deal Llc | is associated with 35 domains |
| Email | frank@leadsmarket.com | is associated with 13 domains |
| Address | 3651 LINDELL ROAD | map |
| City | LAS VEGAS | |
| State | NV | **Financedfast.com whois** [7] |

21.    LeadsMarket can also be connected directly with Nesmetaju. In the Terms of Use for icashloans.com, Nesmetaju LLC is shown to be the company name. The email address includes the domain LeadsMarket.com:

**Contact Information:**

Company name: Nesmetaju LLC
Address: Springates Building, Lower Government Road, Charlestown, Nevis, Saint Kitts And Nevis
Phone:  866-971-7538
Email Address: support@icashloans.com.stg.leadsmarket.com [8]

---

[5] https://www.financedfast.com/PrivacyPolicy

[6] https://domainbigdata.com/financedfast.com

[7] https://domainbigdata.com/financedfast.com

[8] https://www.icashloans.com/TermsOfUse

CLASS ACTION COMPLAINT

22.    Jason Romrell is the General Counsel and Director of Government

Relations for Leadsmarket.[9] [10]



23.    Romrell is specifically referenced in the corporate registry for WD

Services:



---

[9] https://www.linkedin.com/in/romrell/

[10] https://www.vanguardlawmag.com/case-studies/jason-romrell-leadsmarket-com/

[11] https://www.vanguardlawmag.com/case-studies/jason-romrell-leadsmarket-com/

[12]

https://wyobiz.wy.gov/business/FilingDetails.aspx?eFNum=253135206209132167216212101130169208181020200081

CLASS ACTION COMPLAINT

In addition, the address listed for WD Services is the same as the address used by LeadsMarket:



13

24.     Romrell also registered the trademark for 45 Cash on behalf of LeadsMarket.[14]

25.     The privacy policy for 45cash.com shows that it is owned by Nesmetaju:



26.     45cash.com uses alternate business names that include Nesmetaju, WD Services and Weekly Deal:

---

[13] https://leadsmarket.com

[14] https://trademark.trademarkia.com/45-cash-88080153.html

9

CLASS ACTION COMPLAINT

## 45 Cash

This is a multi-location business. Need to find a different location?

**BBB File Opened:**    12/23/2015

**Alternate Business Name**
Rubik Loan
Cash Reserves, LLC
WD Services
WeeklyDeal, LLC
NoProblemCash.com
45Cash.com
Nesmetaju, LLC

15

27.    In addition to LeadsMarket telemarketing through Nesmetaju LLC, Weekly Deal LLC, WD Services and Dry River LLC, LeadsMarket uses a network of affiliates that it controls to telemarket on LeadsMarket's behalf.

28.    LeadsMarket screens all of its affiliates prior to giving them access to its online platform. An affiliate must fill out a full application and even provide references upon signing up.[16]

29.    An affiliate is required to disclose its marketing methods and provide examples of its marketing methods as part of the application process.

30.    Affiliates must gain the consent of LeadsMarket in order to use text message marketing as a means of gaining new leads:

---

[15] https://www.bbb.org/us/nv/reno/profile/payday-loans/45-cash-1166-90022908/details

[16] https://www.leadsmarket.com/publisher-signup

CLASS ACTION COMPLAINT

31.    Loan providers pay LeadsMarket directly for providing leads, regardless of how LeadsMarket generated those leads.

32.    If an affiliate generates the lead on behalf of LeadsMarket, LeadsMarket still profits from the sale of the lead.

33.    LeadsMarket profits from all of the telemarketing that is performed for the sake of soliciting leads from consumers, including telemarketing by means of unsolicited text messages.

34.    In sending unsolicited marketing text messages, Defendant, or a third party acting on its behalf, uses an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator, and/or with the capacity to load and dial from lists of stored phone numbers.  This is evident from the

---

[17] https://www.leadsmarket.com/publisher-signup

CLASS ACTION COMPLAINT

circumstances surrounding the text messages, including the ability to trigger an automated response by replying "STOP," the text messages' commercial and generic content, that substantively identical texts were sent to multiple recipients, that multiple texts were sent to the same recipients, and that consumers attempts to opt out of text messages are regularly ignored, which are consistent with the use of an automatic telephone dialing system to send text messages.

35.    The text messages LeadsMarket is responsible for are frequently complained about online. This is just a small sampling of those complaints, which also show how difficult it is to opt-out of LeadMarket's text messages:

- "This site BITES..!! [referring to noproblemcash.com, a Nesmetaju registered site] I keep getting texts referencing a name 'Sundaram', to my phone number that I've had for the last 9 YEARS..! [I] DON'T KNOW anyone by this name (my name is Steve) and even though I've replied to these messages and emailed the companies involved (where possible) it made NO difference..!"[18]

- "I keep getting emails and text from this [noproblemcash.com] loser site"[19]

- "I received a text from them and something isn't right because now someone else I guess is opting for them to stop texting and it's coming to me!!??? I have seven stop texts immediately following their text! Interesting! Why my number???"[20]

- ""These idiots keep texting a certain amt.of loan amts.to my phone constantly,along with 4 other ppl texting to my phone nd theirs as a

---

[18] https://www.scamfinance.com/noproblemcash/

[19] Id.

[20] Id.

12

CLASS ACTION COMPLAINT

group.I'm tired of these crooks,nd the fools should know by now that no one is falling for their lies."[21]

- "I can't get them to stop either, though I've unsubscribed numerous times. One of their message says it has been four weeks since I had a loan with them. I have never had a loan with anyone by the name 'White Rock Loans'."[22]

- "I keep getting text messages to a Melissa. This is not my name. I have blocked them several times. requested them to stop texting me. I get three to four a day."[23]

- "I … keep trying to unsubscribe from this crap and they keep soliciting me… there's no number to call them either…. i'm so pissed… I don't know how they got my number"[24]

- "I have begged them to STOP texting my phone.They are harassing me to apply for a loan..And I DO NOT WANT ANY LOAN.Please make them STOP texting my phone with their offers.I DID NOT APPLY FOR ANY ASSISTANCE."[25]

## PLAINTIFF WAMMACK'S ALLEGATIONS

36.    Plaintiff Wammack's cell phone number was registered with the DNC on April 5, 2013 in order to avoid receiving unwanted solicitation calls and text messages.

37.    Beginning in October, 2018, Wammack began receiving autodialed text messages from LeadsMarket to her cellular phone number.

---

[21] https://www.scamfinance.com/whiterockloans/

[22] Id.

[23] Id.

[24] Id.

[25] Id.

13

CLASS ACTION COMPLAINT

38.     On October 9, 2018 at 8:01 AM, Wammack received an autodialed text message from LeadsMarket using shortcode 99629:



39.     Wammack immediately replied "STOP" and received a text message stating, "You have opted out of the DryRiver SMS Program and will no longer receive any messages."

40.     The link provided in the text leads directly to that specific link 1.Lend52.com/go/?v1=2AyBYePR, with no redirection.

41.     Lend52.com is owned by Dry River LLC, according to Lend52.com's privacy policy[26]. In addition, when Plaintiff opted-out from receiving text messages from Defendant, she received confirmation from Defendant LeadsMarket using the name Dry River:

---

[26] https://www.lend52.com/PrivacyPolicy

14

CLASS ACTION COMPLAINT

42.    Dry River LLC shows that Furat Kasimov is the main contact who is Director for LeadsMarket.

**Contact Information**

**Dry River LLC**
30 N Gould St
Sheridan, WY 82801

**Contact:**  Furat Kasimov
**Title:**  Managing Member
**Phone:**  (323) 570-0756

[27]

43.    According to WhitePages Premium, the phone number (323) 570-076 in the above image is registered to Jason Romrell, the General Counsel for LeadsMarket.[28]

44.    By sending "STOP" to shortcode 99629 on October 9, 2018, Wammack opted-out from receiving additional text messages from LeadsMarket.

45.    Despite opting-out, Wammack received many additional text messages that all lead to websites registered mostly to LeadsMarket using the name Nesmetaju.

46.    In fact, Wammack received another autodialed text message from Defendant using shortcode 99629 on March 13, 2019 at 8:00 AM, despite opting-out from receiving text messages from shortcode 99629 on October 9, 2018 at 8:01 AM:

---

[27] http://www.buzzfile.com/business/Dry-River-LLC-323-570-0756
[28] https://premium.whitepages.com/phone/1-323-570-0756

CLASS ACTION COMPLAINT



47.     Prior to and after March 13, 2019, Wammack received a number of other unsolicited text messages from Defendant LeadsMarket.

48.     For example, on November 30, 2018 at 10:18 AM, Wammack received an unsolicited, autodialed text message from LeadsMarket to her cellular phone, using phone number 206-279-6192:

CLASS ACTION COMPLAINT



49.    The website secure3623.us leads directly to https://www.whiterockloans.com/?c=247899&v1=SH-LTC-08-8:

▶ 🌐 http://secure3623.us
▶ 🔒 https://play.google.com
▶ 🔒 https://uib.ff.avast.com
▶ 🔒 https://www.whiterockloans.com  29

50.    The Whois registry information for Whiterockloans.com shows that it is registered to Frank Kasimov, Director of LeadsMarket:

---

29 Based on an investigation of secure3623.us on March 28, 2019

CLASS ACTION COMPLAINT

Registrant Name: FRANK KASIMOV
Registrant Organization: CASH RESERVES LLC
Registrant Street: 1810 E. SAHARA AVENUE
Registrant Street: SUITE 1598
Registrant City: LAS VEGAS
Registrant State/Province: NV
Registrant Postal Code: 89104
Registrant Country: US
Registrant Phone: +1.8886667058
Registrant Phone Ext:
Registrant Fax: +1.8886667058
Registrant Fax Ext:
Registrant Email: FRANK@LEADSMARKET.COM     30

51.     Plaintiff Wammack also received 3 autodialed text messages on her cellular phone from LeadsMarket directing her to visit srsloans.com on February 7, 2019, February 12, 2019 and on February 15, 2019:



52.     Visiting srsloans.com brings up a series of websites, the majority of which are owned by LeadsMarket:

---

30 https://whiterockloan.com.cutestat.com/

CLASS ACTION COMPLAINT



[31]

Sparning.com and loanmatchingservice.com are both websites owned by LeadsMarket under the Nesmetaju name. Sparning.com is also the first website srsloans.com forwards to:



[32]

---

[31] Screenshot from Charles, generated by visiting https://www.srsloans.com

[32] http://sparning.com/pages/PrivacyPolicy.html

CLASS ACTION COMPLAINT

53.    LeadsMarket willingly ignored Plaintiff Wammack's opt-out request and continued to send her unsolicited autodialed text messages.

54.    It is estimated that Plaintiff Wammack received at least 50 unsolicited, autodialed text messages from LeadsMarket, many of which were sent after Plaintiff Wammack opted-out of receiving the text messages.

55.    Plaintiff Wammack does not have a relationship with LeadsMarket or any of its affiliates and has never consented to any contact from Defendant.

56.    Simply put, LeadsMarket did not obtain Plaintiff Wammack's express written consent prior to texting her cellular telephone using an autodialer.

**PLAINTIFF TRUJILLO'S ALLEGATIONS**

57.    Plaintiff Trujillo's cell phone number was registered with the DNC on May 13, 2005 in order to avoid receiving unwanted solicitation calls and text messages.

_____

[33] http://loanmatchingservice.com/pages/PrivacyPolicy.html

CLASS ACTION COMPLAINT

58.    On October 3, 2018 at 9:19 AM, Trujillo received an unsolicited, autodialed text message from or on behalf of LeadsMarket on his cellular phone sent from phone number 517-258-8967:



59.    The website Gt1750.pw leads directly to whiterockloans.com displaying url: https://www.whiterockloans.com/?c=246718&v1=SD-MD01-02-0523-04.

---

[34] Screenshot from Charles, generated by visiting gt1750.pw

CLASS ACTION COMPLAINT

60.     On October 31, 2018 at 7:16 AM, Trujillo received a second unsolicited, autodialed text from or on behalf of LeadsMarket on his cellular phone, this time using phone number 863-486-8085:



61.     The website nowin3000.pw leads directly to whiterockloans.com displaying url: https://www.whiterockloans.com/?c=246718&v1=SD-MD01-03-05231A-1

▶ 🌐 http://nowin3000.pw

▶ 🔒 https://www.whiterockloans.com                35

62.     Whiterockloan.com is registered to Frank Kasimov, who is the Director of LeadsMarket.[36]

63.     Plaintiff Trujillo does not have a relationship with LeadsMarket or any of its affiliates and has never consented to any contact from Defendant.

---

[35] Screenshot from Charles, generated by visiting nowin3000.pw

[36] https://whiterockloan.cutestat.com/

CLASS ACTION COMPLAINT

64.     Simply put, LeadsMarket did not obtain Plaintiff Trujillo's prior express written consent to text him on his cellular telephone number using an autodialer.

65.     The unauthorized text message solicitations made by LeadsMarket, as alleged herein, have harmed Plaintiff Wammack and Plaintiff Trujillo in the form of annoyance, nuisance, and invasion of privacy, and disturbed Wammack and Trujillo' use and enjoyment of their phones, in addition to the wear and tear on the phones' hardware (including the phones' batteries) and the consumption of memory on the phones.

66.     Seeking redress for these injuries, Wammack and Trujillo, on behalf of themselves and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed text messages to cellular telephones, and unsolicited text messages to phone numbers registered with the DNC.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiffs' TCPA Claims

67.     Plaintiff Wammack and Plaintiff Trujillo bring this action pursuant to Federal Rule, of Civil Procedure 23(b)(2) (b)(3) on behalf of themselves and all others similarly situated and seek certification of the following Classes:

**Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an affiliate

CLASS ACTION COMPLAINT

acting on behalf of Defendant) texted, (2) to the person's cellular telephone number, (3) using the same equipment used to text Plaintiffs, and (4) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to text Plaintiffs, or (b) they did not obtain prior express written consent.

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an affiliate acting on behalf of Defendant) texted more than one time on his/her residential telephone number, (2) within any 12-month period, (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the purpose of selling Defendant's products and services, and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to text Plaintiffs, or (b) they did not obtain prior express written consent.

**Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an affiliate acting on behalf of Defendant) text messaged more than one time on his/her residential telephone number, (2) within any 12-month period, (3) for the purpose of selling Defendant's products and services.

68.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorney; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated

CLASS ACTION COMPLAINT

and/or released. Plaintiffs anticipate the need to amend the Class definitions following appropriate discovery.

69.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

70.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant sent autodialed text messages to Plaintiffs and members of the Classes without first obtaining prior express written consent to send the texts;

(b) whether Defendant sent text messages to Plaintiffs and members of the Class despite the fact that Defendant was texting phone numbers protected by the DNC;

(c) whether Defendant continued to send text messages to Plaintiff Wammack and members of the Class despite requests for the text messages to stop;

(d) whether Defendant's conduct constitutes a violation of the TCPA; and

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

CLASS ACTION COMPLAINT

71.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to either Plaintiff. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither of the Plaintiffs nor their counsel have any interest adverse to the Classes.

72.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to either Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from

CLASS ACTION COMPLAINT

Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Autodialed No Consent Class)**

73.    Plaintiff Wammack and Plaintiff Trujillo repeat and reallege paragraphs 1 through 72 of this Complaint and incorporate them by reference.

74.    Defendant and/or its agents sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff Wammack, Plaintiff Trujillo and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be texted, using a random or sequential number generator, and/or to load and/or dial from lists of phone numbers.

75.    These solicitation text messages were sent *en masse* without the prior express written consent of Plaintiff Wammack, Plaintiff Trujillo and the other members of the Autodialed No Consent Class.

76.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Wammack, Plaintiff Trujillo and the other

CLASS ACTION COMPLAINT

members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiffs and the Do Not Call Registry Class)

77.    Plaintiff Wammack and Plaintiff Trujillo repeat and reallege paragraphs 1 through 72 of this Complaint and incorporate them by reference.

78.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

79.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[37]

80.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based

---

[37] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

CLASS ACTION COMPLAINT

on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

81.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Wammack, Plaintiff Trujillo and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

82.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Wammack, Plaintiff Trujillo and the Do Not Call Registry Class received more than one text message in a 12-month period by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff Wammack, Plaintiff Trujillo and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

83.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

CLASS ACTION COMPLAINT

## THIRD CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff Wammack and the Internal Do Not Call Class)

84.    Plaintiff Wammack repeat and reallege paragraphs 1 through 72 of this Complaint and incorporate them by reference.

85.    Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the

CLASS ACTION COMPLAINT

telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

86.    Defendant sent marketing text messages to Plaintiff Wammack and members of the Internal DNC Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendants to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

CLASS ACTION COMPLAINT

87.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

88.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff Wammack and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

a) An order certifying the Classes as defined above; appointing Plaintiffs as the representatives of the Classes; and appointing their attorney as Class Counsel;

b) An award of actual and/or statutory damages to be paid into a common fund for the benefit of Plaintiffs and the Classes;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

CLASS ACTION COMPLAINT

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs request a jury trial.

Respectfully Submitted,

**GRACE WAMMACK** and **MICHAEL TRUJILLO**, individually and on behalf of those similarly situated individuals

Dated: July 11, 2019

By: */s/ Rachel E. Kaufman*
Rachel E. Kaufman (Cal Bar no. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

33

CLASS ACTION COMPLAINT